UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00505 (RCL) |
| | : | |
| ISAAC SAMUEL YODER, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE USE OF CERTAIN LANGUAGE AT TRIAL**

The defendant Isaac Samuel Yoder moves to preclude the United States from using certain terminology to describe the events of January 6, 2021, at trial—specifically, the terms "riot," "insurrection," "mob," "extremists," "anti-government," or "breach." (ECF No. 44 at 1.) In essence, Yoder asks that the Court prevent the government from using language that accurately establishes and describes the defendant's crimes. Because these terms fairly describe the riot, rioters, and Yoder's conduct that day, this Court should deny the motion.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

Defendant Yoder traveled with his family to Washington, D.C., from Missouri, arriving in the morning of January 6, 2021. Yoder—dressed in a George Washington costume and holding a large American flag—attended the "Stop the Steal" rally on the Ellipse. After returning to his family's vehicle, Yoder learned of the breach of the Capitol and decided to head there. Metropolitan Police Department officers responding the West Front of the Capitol Building had declared a riot at approximately 2:03 p.m., as they and members of the United States Capitol Police ordered the crowd to disperse and deployed crowd control munitions, before becoming overwhelmed by the mob and retreating further into the building at approximately 2:41 p.m. At approximately 3:14 p.m., after passing the area the police officers had recently vacated, Yoder entered the building through the Senate Wing Door, one of eight breach locations, where he gave a speech to other rioters. He then walked to the Crypt, stopping to pose for photographs with other members of the mob. Yoder left the Capitol building the way he came in, at approximately 3:33 p.m.

Based on his actions on January 6, 2021, Yoder was charged with: (1) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (3) Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). (*See* ECF No. 32 (Second Superseding Information).)

**ARGUMENT**

Yoder now seeks to preclude the Government's use of the terms "riot," "insurrection," "mob," "extremists", "anti-government," and "breach" at trial as unduly prejudicial under Fed. R. Evid. 403, and further argues that the terms "extremist" or "anti-government" are improper

character evidence under Fed. R. Evid. 404(a). (ECF No. 44 at 3.) Because these terms accurately describe the events on January 6, 2021, and defendant's political views will not be used to prove his character, the Court should deny his motion.

I. **The Descriptors Accurately Describe the Events of January 6, and Fed. R. Evid. 403 Does Not Preclude Them**

Defendant Yoder first argues that the terms "riot," "insurrection," "mob," "extremist", "anti-government," and "breach" are "unfairly prejudicial, would confuse the issues, and/or mislead the jury" under Fed. R. Evid. 403. (ECF No. 44 at 3.) Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note). However, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v.*

3

*Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around the defendant's crimes. Contrary to the defendant's insinuations of "an assumed crime" (ECF No. 44 at 3), what took place on January 6, 2021, was in fact a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy. Indeed, after carefully considering the facts of other January 6 cases, many other members of this Court have recognized the riot as just such an attack. *See, e.g., United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language— and not euphemisms—to describe the nature and gravity of the defendant's conduct. And while Yoder objects to being "improperly associated" with others who may have had "extremist[]" or

"anti-government" views (ECF No. 44 at 2–3), any link is due to the defendant's own presence in the Capitol as part of the mob that breached the building—the conduct for which he is being charged.

In another January 6 case, *United States v. Vincent Gillespie*, Chief Judge Howell recently denied a defendant's motion *in limine* to exclude reference to substantially similar terms under Fed. R. Evid. 403. Memorandum and Order, ECF No. 43, 1:22-cr-00060 (BAH) (Nov. 30, 2022). The court found that the terms "insurrection," "attack," "riot," "mob," and "rioters" "accurately describe[d] the events that occurred on January 6, 2021." *Id.* at 5–6 (collecting other cases using these terms in January 6 proceedings). While the terms also overlapped with elements of the charges in that case, Chief Judge Howell declined to "muzzl[e] the government or its witnesses from employing commonly used phrases to describe the events on January 6, 2021," and held that "the mere use of these terms does not . . . signal prejudice substantially outweighing their probative value" under Fed. R. Evid. 403. *Id.* at 6–7. This Court should reach the same conclusion for the terms Yoder seeks to exclude.

## II.     Evidence of Mr. Yoder's Political Views Are Not Barred by Fed. R. Evid. 404(a)

Defendant Yoder next argues that the government should be precluded under Fed. R. Evid. 404(a) from arguing that his "political views . . . should be admitted to show that his actions were in accordance with the 'extremist' or 'anti-government' actions" of other rioters. (ECF No. 44 at 3.) In essence, Yoder argues that his character should not be labeled as "anti-government" by his association with the actions of other rioters on January 6, 2021. Rule 404(a)(1) generally prohibits "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

The government does not plan to elicit evidence of Mr. Yoder's political views to demonstrate his character, to describe those views as "extremist" or "anti-government," or to suggest that those views suggest a propensity to act as Mr. Yoder did on January 6, 2021. However, the government should not be precluded from introducing evidence describing Mr. Yoder's political views that, depending on the development of the facts at trial, tend to establish Mr. Yoder's motive, planning, knowledge, and intent on January 6, 2021. *See United States v. McDowell*, 762 F.2d 1072, 1075 (D.C. Cir. 1985) (per curiam) (holding that bulletproof vest did not violate Fed. R. Evid. 404(a) where it "was not offered to prove a bad character and thus, by inference, a propensity to commit crimes" but was "squarely relevant on the issue of intent"); *cf.* Fed. R. Evid. 404(b)(2) (permissible uses of prior bad acts evidence include proving "motive, opportunity, intent, preparation, plan, [and] knowledge . . . ."). In other words, Mr. Yoder's political views may become directly relevant to establishing the elements of the offenses, such as his intent to "impede or disrupt the orderly conduct of Government business or official functions," 18 U.S.C. § 1752(a)(2), or his "intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress," 40 U.S.C. § 5104(e)(2)(D). Defendant's motion to preclude use of the terms "extremist" or "anti-government" as improper character evidence is thus misdirected and should be denied.

**CONCLUSION**

For the reasons stated above, Defendant Yoder's motion should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   */s/ Michael L. Barclay*
        MICHAEL L. BARCLAY
        Assistant United States Attorney
        Member of N.Y. Bar
        U.S. Attorney's Office for the District of Columbia
        601 D Street, NW
        Washington, D.C. 20530
        (202) 252-7669
        Michael.Barclay@usdoj.gov

        SARAH W. ROCHA
        Trial Attorney / Detailee
        D.C. Bar No. 977497