UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-CR-505 (RCL) |
| | : | |
| ISAAC SAMUEL YODER, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' TRIAL BRIEF

The United States of America respectfully submits this trial brief in advance of the March 20, 2023 trial scheduled before this Court in this case. The brief is divided below into a list of the outstanding motions to be resolved at the pretrial conference; a summary of the charges and elements; a summary of the anticipated government witnesses' testimony; and a discussion of certain evidentiary or other legal issues anticipated to arise.

## OUTSTANDING MOTIONS

The motions that have not yet been ruled on by this Court are: 1) the defendant's motion for change of venue, *see* Dkt. 43; and 2) the parties' motions in limine, *see* Dkts. 37–39, 44.

**I.      Pretrial Motion**

The only pretrial motion that is outstanding for this Court's consideration at the motions hearing currently scheduled for March 15, 2023 is the defendant's motion to change venue to the Western District of Missouri, filed on December 13, 2022. *See* Dkt. 43.[1] The government filed

---

[1] As procedural background, after this case was reassigned to this Court, defendant filed a motion to postpone the previously set trial date. *See* Dkt. 42. On November 29, 2022, during the hearing on defendant's motion, the government noted that the defendant had failed to respond to the government's motions in limine or to file any other motions by the deadlines set forth under Judge Sullivan's previous pre-trial order (Dkt. 40, now vacated). In addition to setting a new trial date, the Court, at defendant counsel's request, permitted the parties to file any additional motions

its opposition to this motion on December 27, 2022.  *See* Dkt. 45.  The defendant did not file a reply in support of the motion.  The motion should be denied for the reasons set forth in the government's opposition brief.

## II. Motions in Limine (MIL)

### A. Government motions in limine

The government's motions in limine in this case are listed below.  The government filed all three motions on September 13, 2022.  The defendant did not respond to any of the government's motions in limine, and it is unclear if the motions are contested.

#### 1. MIL To Limit Cross-Examination of U.S. Secret Service Witnesses

This motion sought to preclude the defendant from inquiring as to Secret Service protocols or details about the nature of Secret Service protective details.  Dkt. 37 at 1-7.

#### 2. MIL To Limit Evidence and Cross-Examination regarding USCP Surveillance Cameras

This motion sought to preclude the defendant from inquiring as to the exact location of U.S. Capitol Police security cameras.  Dkt. 38 at 1-6.

#### 3. MIL To Preclude Defendants from Arguing Entrapment by Estoppel

This motion sought to preclude the defendant from raising the affirmative defense of entrapment by estoppel, as there is no evidence supporting such a defense.  Dkt. 39 at 1-4.

### B. Defendant motion in limine to prevent the government from using the following terms: "Riot," "Insurrection," "Mob," "Extremist," "Anti-government" or "Breach"

The defendant filed a motion in limine on December 13, 2022.  Dkt. 44.  The motion sought to prevent the government from using the identified terms in argument and evidence under Fed. R.

---

within two weeks, with replies and oppositions due according to the local rules.  Defendant filed this motion, and the motion in limine noted below, on December 13, 2022.

Evid. 403, and from admitting Mr. Yoder's political views to show that he acted in conformity with the views of others under Fed. R. Evid. 404(a). The government opposed this motion, pointing out that such terms fairly describe the events of January 6, 2021, and that it could permissibly use Mr. Yoder's political views to show his motive, planning, knowledge, and intent. Dkt. 46 at 2-7. The motion should be denied for the reasons set forth in the government's opposition brief.

## CHARGES AND ELEMENTS

Below, the government outlines the charges and elements for each charge, along with any statements of law relevant to that count.

**I.   Count One**

Count One of the Second Superseding Information charges the defendant with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find the defendant guilty of this offense, the jury must find that the government proved each of the following elements beyond a reasonable doubt:

   1. First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so;

   2. Second, that the defendant did so knowingly;

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the

defendant knowingly entered or remained in a restricted building, the jury may consider all of the evidence, including what the defendant did or said.

## II.     Count Two

Count Two of the Second Superseding Information charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendant guilty of this offense, the jury must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances or interferes with another person by jostling against or unnecessarily crowding that person. "Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

## III.     Count Three

Count Three of the Second Superseding Information charges the defendant with violent entry and disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). In order to find the defendant guilty of this offense, the jury must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

2. Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

4

    3.    Third, that the defendant acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

## IV. Count Four

Count Four of the Second Superseding Information charges the defendant with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In order to find the defendant guilty of this offense, the jury must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

2. Second, that the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.

## UNITED STATES' EVIDENCE

## I. The Government's Witnesses

The government currently intends to call the below witnesses in either its case-in-chief or in rebuttal to the defendant's evidence. The government has asked the defense whether it will stipulate to foundational facts such as the restricted area around the Capitol on January 6, 2021 or the certification of the Electoral College vote; the authenticity of basic pieces of evidence like

CCV footage, evidence extracted from the defendant's cell phone, or other videos recorded by third parties; and the identity of the defendant. If such stipulations are entered into, some of the following witnesses may not be necessary. We have not yet received confirmation as to any stipulations.

**U.S. Secret Service ("USSS") Inspector Lanelle Hawa** will testify about the USSS' and U.S. Capitol Police's security preparations in anticipation of Congress' proceedings to certify the 2020 Presidential Election on January 6, 2021 and how the breach of the Capitol came to pose a severe threat to the safety of Vice President Pence, who was presiding over the certification, and his wife and daughter, who were also Secret Service protectees that day.

**United States Capitol Police ("USCP") Captain Ronald Ortega** will provide overview testimony regarding the riot that took place at the Capitol on January 6, 2021. **Captain Ortega** will identify relevant locations at the Capitol, describe the security measures in place, and explain how the area was restricted by a perimeter of bicycle racks and snow fencing and was closed to the public because of the certification and because of COVID-19. **Captain Ortega** will describe the progress of the riot on January 6, 2021 and the breaches of relevant entry points into the Capitol—in particular, the Senate Wing Door through which Mr. Yoder and other rioters entered. **Captain Ortega** will further explain how the breach of the Capitol caused the Joint Session to go into recess as Congress and the Vice President evacuated and sheltered for hours until it was safe to return. Finally, **Captain Ortega** will authenticate and articulate the relevance of USCP's closed-caption video ("CCV") system that captured footage of rioters near the Senate Wing Door and in the Crypt.

**Special Agent Alan Purcell (retired)** and/or **Special Agent Isaac McPheeters** of the Federal Bureau of Investigations ("FBI") (or some subset of these witnesses) will testify about

their investigation of the defendant.  **Special Agent Purcell** will also recount an interview of the defendant, authenticate the clothing voluntarily provided by the defendant, and walk through the process of searching the cell phone voluntarily provided by the defendant and authenticate text messages and photos from that phone.  **Special Agent Purcell** or **Special Agent McPheeters** (or some subset of these witnesses) will also authenticate certain videos or photos obtained from other defendants or individuals that depict Yoder.

**USCP Lieutenant Dennis Kelly (retired)** will testify about his interactions with the defendant inside the U.S. Capitol on January 6, 2021.  In particular, **Lieutenant Kelly** will describe his role as a platoon commander on January 6, 2021 and his assignment to the West Front of the Capitol building.  He will recount his and other officers' efforts around 3:30 p.m. to resecure the Senate Wing Door, which rioters had previously breached.  **Lieutenant Kelly** will describe his interactions with the rioters inside the building, including his orders for rioters to leave, as well as his interactions with defendant Yoder in particular.  **Lieutenant Kelly** will identify himself in videos in which he appears, including surveillance video showing him with defendant Yoder.  If necessary, **Lieutenant Kelly** will also authenticate open-source photos depicting defendant Yoder near the Senate Wing Door or inside the Crypt of the U.S. Capitol building.

## LEGAL AND EVIDENTIARY ISSUES

**I.    Evidentiary Issues**

    **A.    Hearsay Issues**

        **1.    Defendant's statements under Rule 801(d)(2)**

The government intends to introduce a number of defendant Yoder's statements under Federal Rule of Evidence 801(d)(2), which defines an "Opposing Party's Statement" as non-hearsay.  Fed. R. Evid. 801(d)(2).   These statements will be those that Yoder made himself to a witness, or are contained or captured in text messages or videos.  Fed. R. Evid 801(d)(2)(A).

7

### 2. Statements offered not for their truth, but for their effect on the listener (Mr. Yoder)

The government will seek to introduce numerous statements made by other individuals in person, when Mr. Yoder was present or nearby. The government will lay foundation that Mr. Yoder was present during these statements. These statements will be offered not for their truth, but for their effect on the listener (Mr. Yoder) or to prove Mr. Yoder's knowledge. For example, the government will offer testimony about Mr. Yoder's interview with the FBI, in which Mr. Yoder himself recounted statements made by his brothers to him that "Pence folded. It's bad. They've forced their way into the Capitol." The government will introduce this statement not for its truth but for the effect on Mr. Yoder—that he then decided to go the Capitol—and his intent to "impede or disrupt the orderly conduct of Government business or official functions" (Count 2) or to "impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress" (Count 3).

### 3. Statements offered not for their truth, but as context

The government will introduce certain statements by declarants other than the defendant, in texts or videos relevant for other reasons, not for their truth, but as context or irrelevant background. For example, in one video exhibit, the cameraperson says "Look at this bro," and "I'm just looking for the statues," while filming Mr. Yoder in the Small Senate Rotunda near the Crypt. Those statements are irrelevant to Mr. Yoder's case, but are limited context to help the jury understand the video. The government may also introduce text messages on January 6, 2021 between Mr. Yoder and his wife, Kelly Yoder, obtained from Mr. Yoder's phone. The text messages from Kelly Yoder ("Is that you and another person wearing a costume? It's so dark there still," "How's t going there? I heard it's cold!") will not be offered from their truth, but as necessary

context to understand Mr. Yoder's replies. These questions also generally inquire of—as opposed to attempt to establish—a fact.

### B.     Authentication Issues

The government expects to authenticate four categories of photos and videos: (1) Capitol CCV; (2) videos or photos obtained from other January 6, 2021 defendants or participants; (3) photos and videos obtained through open-source investigation; and (4) body-worn camera footage. The government expects to authenticate Capitol CCV footage through testimony about the accuracy of the process or system that creates it under Fed. R. Evid. 901(b)(9). For the next two categories, videos or photos from other January 6 participants and photos or videos obtained through open-source investigation, the government anticipates authenticating this evidence through personal knowledge of the circumstances it was obtained, *see* Fed. R. Evid. 901(b)(1), comparisons to authenticated evidence, such as common landmarks also depicted in CCV, Fed. R. Evid. 901(b)(3), or through an examination of the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," like shared depictions of the defendant's distinctive clothing. Fed. R. Evid. 901(b)(4). Finally, the government anticipates authenticating any body-worn camera footage through Fed. R. Evid. 901(b)(3) or (4) in the same manner as described above.

### C.     Marital communications privilege

The government intends to introduce text messages between defendant Yoder and his wife, Kelly Yoder, that were extracted from the cell phone voluntarily provided by the defendant. "The confidential marital communications privilege may be asserted against the production of evidence when four prerequisites are met: (1) there must have been a communication; (2) there must have been a valid marriage at the time of the communication; (3) the communication must have been made in confidence; and (4) the privilege must not have been waived." *S.E.C. v. Lavin*, 111 F.3d

921, 925 (D.C. Cir. 1997) (internal citations omitted).  Even assuming the other requirements are met, any possible marital communications privilege over these text messages has long been waived.  Mr. Yoder voluntarily turned over his phone containing these text messages to the FBI on May 19, 2021 and signed a form indicating his consent.  At no point since then—almost two years later—has defendant Yoder or his wife sought to claim privilege over these texts or block their use in these proceedings.  *Cf. Lavin*, 111 F.3d at 932 (holding in part that employer's review of taped conversations between trader and his wife in connection with SEC investigation did not waive marital communications privilege where trader and wife specifically requested that employer take all steps necessary to preserve privilege).  Therefore, there is no marital communications privilege issue in introducing statements made between Mr. Yoder and Kelly Yoder in this case.

### D. General evidence of the Capitol riot

The government will introduce evidence of the events at the U.S. Capitol on January 6, 2021, even beyond those in the immediate vicinity of the defendant.  This evidence will include:

1. An overview U.S. Capitol Police witness, Captain Ronald Ortega, who will testify regarding the crowd's initial breaches of the barriers surrounding the U.S. Capitol's restricted area and the crowd's progress in pushing through police lines before ultimately entering the U.S. Capitol itself, as well as law enforcement's hours-long struggle to clear the U.S. Capitol grounds of rioters;

2. An overview montage of U.S. Capitol Police CCV footage of the riot, showing the same events;

3. An overview montage of U.S. House and Senate footage depicting the certification of the 2020 Presidential Election;

4. A U.S. Secret Service witness, Inspector Lanelle Hawa, who will testify to the presence and movements of the Vice President, Michael Pence, at the U.S. Capitol on January 6, 2021.

Mr. Yoder entered the Capitol at approximately 3:14 p.m. and left the Capitol at approximately 3:33 p.m. However, evidence of the overall riot and its progression that day, both before and after Mr. Yoder's entry into the Capitol, is relevant to at least three counts.

First, to prove Count Two, the government must prove that Mr. Yoder's disorderly or disruptive conduct "in fact impeded or disrupted the orderly conduct of Government business or official functions." Thus, the government can offer proof that the riot as a whole——of which Mr. Yoder was a part—interfered with or stopped the certification and could not resume until all rioters, including Mr. Yoder, were cleared from the U.S. Capitol building.

Second, to prove Count Two, the government must prove that Mr. Yoder intended to "impede or disrupt the orderly conduct of Government business or official functions" and, on Count Three, intended to "impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress." Thus, the riot's progress in attempting to interfere with or stop the certification—and what Mr. Yoder was likely to have seen when he entered the Capitol—bears directly on Mr. Yoder's intent when he unlawfully entered the Capitol building.

Third, to prove Count One, the government must prove that Mr. Yoder acted knowingly in entering or remaining in a restricted area. Evidence that other rioters destroyed property, such as windows or doors, and set off alarms, would be directly relevant to Mr. Yoder's knowledge that he was entering or remaining without lawful authorization.

## II.    Legal Issues

The United States is not aware of any other legal issues requiring the Court's attention at this time.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     */s/ Michael L. Barclay*
MICHAEL L. BARCLAY
Assistant United States Attorney
Member of N.Y. Bar
U.S. Attorney's Office for the District of Columbia
601 D Street, NW
Washington, D.C. 20530
(202) 252-7669
Michael.Barclay@usdoj.gov

SARAH W. ROCHA
Trial Attorney / Detailee
D.C. Bar No. 977497
219 S. Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(202) 330-1735
sarah.wilsonrocha@usdoj.gov