IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 21-CR-505 (RCL) |
| v. | ) | |
| | ) | Judge: Lamberth |
| ISAAC YODER, | ) | |
| | ) | Sentencing Date: 8/25/23 |
| Defendant. | ) | |

### DEFENDANT ISAAC YODER'S
### MEMORANDUM IN AID OF SENTENCING

**COMES NOW** Isaac Yoder, through counsel, and submits the following memorandum in aid of sentencing.

### Background

On August 4, 2021, Isaac Yoder was charged with four counts via information: (1) Entering and Remaining in a Restricted Building, in violation of U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); (3) Violent Entry and Disorderly Conduct and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). A superseding information was filed on February 25, 2022. A second superseding information was filed on March 11, 2022.

Since August 4, 2021, Mr. Yoder has been on his personal recognizance with release conditions during the entire time that this matter has been pending. He has attended all court appearances, both in person and via online hearings. He has been and continues to be fully compliant with his release conditions. In addition, from the beginning of the case, he was fully cooperative with law enforcement officials, including having admitted to his actions after meeting with FBI officials, and, after his initial arrest date, returning of his own accord and providing the FBI agent with relevant evidence, such as his Colonial Period costume that he wore on January 6, 2021.

On March 20, 2023, Mr. Isaac Yoder had a bench trial in this matter on all four counts before this Honorable Court. The trial was in person and lasted two (2) days. After the conclusion of the evidence on March 21, 2023, the court asked for both parties to submit findings of fact and conclusions of law. On May 26, 2023, Judge Royce Lamberth found the defendant guilty of all four counts, and a sentencing date was scheduled for August 25, 2023. In anticipation of sentencing, the preparation of a Presentence Investigation Report (PSR) was ordered, and the final PSR was issued on August 17, 2023.

## Argument

### A. Statutory Penalties

The penalty for Count 1, Entering and Remaining in a Restricted Building, in violation of 18 USC § 1752(a)(1), is 1 year imprisonment and/or a $100,000 fine. The penalty for Count 2, Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 USC § 1752(a)(2), 1 year imprisonment and/or a $100,000 fine. The penalty for Count 3, Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 USC § 5104(e)(2)(D), is 6 months imprisonment and/or a $5,000 fine.  The penalty for Count 4, Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC § 5104(e)(2)(G), is 6 months imprisonment and/or a $5,000 fine. Since they are Class B misdemeanors, the U.S. Sentencing Guidelines do not apply to Counts 3 and 4. *See* USSG §1B1.9.

### B. Mr. Yoder's Actions on January 6, 2021

The date of January 6, 2021, will forever be remembered in American history as a day in which the foundations of our democracy were shaken. There were many individuals who caused physical damage, assaulted police officers, and in many other ways disgraced the hallowed halls of the U.S. Capitol. However, Isaac Yoder was not one of those individuals. His crime is based upon his entering the U.S. Capitol and walking around public areas within the Capitol for less than

20 minutes. At no time does the government allege that he was violent, was chanting political statements, or had damaged any property. He followed police orders and exited when he was specifically told to do so by an officer.

On January 5, 2021, Defendant Yoder traveled with family members from Missouri to Washington, D.C., to attend a rally in support of then-President Donald J. Trump. Mr. Yoder and his family travelled overnight and arrived in the early morning hours of January 6, 2021. They parked their vehicle near the U.S. Capitol. Mr. Yoder was dressed in a Colonial Period costume, including a tri-com hat, overcoat, cravat, vest, belts, pants, and boots. He carried an American flag on a pole. He also had an ornamental sword hanging in a scabbard on his belt. Defendant Yoder often wore Colonial Period attire to events as well as using it as part of his advertisement and sometimes as work attire for his own company, Yoder Lock and Key.

While in Washington, D.C., Mr. Yoder separated from his family and went to an area near the Washington Monument. Mr. Yoder did not go into the secure area for the rally speech due to the items he carried. After the speeches, defendant Yoder began to make his way back to the family vehicle. Once he arrived and was reunited with family members, they informed him of "trouble" occurring up at the Capitol. In response, Mr. Yoder headed toward the Capitol. While on his way, Defendant Yoder did not see any signs prohibiting his entry, nor did he encounter

any officers expressly telling him he could not proceed to the U.S. Capitol. Defendant Yoder passed barricades and climbed scaffolding to make his way onto the West Front of the Capitol. However, he did not see police officers and rioters fighting at the time he was at the scaffolding or on the West Front.

Mr. Yoder entered the Capitol Building from the Upper West Terrace of the West Front through the Senate Wing Door at approximately 3:14 p.m. after it had been breached by several many other individuals. At that time, he still was in Colonial Period garb and was carrying the American flag and his sword was changing from his belt. He described thinking the whole situation was very "troubling." He also saw upon his entrance a police presence, which led him to believe the situation was under control. None of the police followers made contact with him, nor did any of the officers impede Mr. Yoder's progress. His impression was that he could go in because it appeared that order had been restored at that point, no officers impeded his progress, and officers appeared to have set up lines to block people from where they could not go.

Shortly after entering the building, in an effort to try and dissuade what was happening, Mr. Yoder climbed atop a pile of broken wooden furniture. In an attempt to discourage others from acting inappropriately, he attempted to yell over the crowd noise and said, "We've been so weak. We've lost any kind of credibility because all we ever do is cave. **We don't riot. We don't do bad things. We keep**

**the law.**" (emphasis added) Mr. Yoder testified that he did this as a "desperate attempt to bring order out of chaos" and that he did not condone the methods of those who were rioting, After a short time, he stopped, as he felt he was being ignored. He then got down from the broken pile of furniture and traveled to the Crypt, an area of the U.S. Capitol located on first floor of the U.S. Capitol beneath the Rotunda.

After circulating around the Crypt for a few minutes, he encountered a United States Capitol Police officer who expressly asked him to leave, a request with which defendant Yoder immediately attempted to comply. Defendant Yoder exited the U.S. Capitol through the Senate Wing Door at approximately 3:33 p.m., approximately 19 minutes from his time of entrance. He then made his way back to his family and their vehicle and he and his family drove back to their homes in Missouri.

A couple of months later, on March 16, 2021, defendant Yoder was arrested and voluntarily agreed to be interviewed by FBI special agents in Joplin, Missouri. He cooperated with the authorities, and he admitted that he entered the U.S. Capitol on January 6, 2021. Mr. Defendant Yoder further cooperated by voluntarily giving the FBI agents his cell phone and some of the colonial attire he wore on January 6, 2021.

### C. Challenges to Sentencing Guideline Calculations

With regard to the guideline calculations, the defendant takes no issue with the criminal history category of I. The defendant further does not dispute the base offense level of 10. However, the defendant objects to the +2 adjustment for Adjustment for Obstruction of Justice pursuant to USSG §3C1.1. From the onset, Mr. Yoder fully complied with FBI agents, even providing, at the FBI's request, evidence that was used against him at trial, such as the clothing he wore on that day. He at no time misled the authorities as to his actions. He has been fully compliant with his release conditions and there has been no suggestion of any impropriety or efforts to impede this case on his part.

Accordingly, the PSR author, therefore, appears to be basing this "obstruction of justice" entirely on the fact that Mr. Yoder exercised his constitutional right to a trial and chose to take the stand and testify. However, nothing in his testimony would indicate that he gave any falsehoods or intentionally lied during his trial testimony. He was never impeached by the government during cross-examination, either by photographic or physical evidence, nor by the testimony of others. He never gave any contradictory testimony within the confines of own testimony. He was consistent in his responses between direct and cross-examination. Furthermore, his testimony concurred and

was not contradictory with any witness testimony that had personal contact with him, such as the FBI agent who arrested him.[1]

Under the Sentencing Guidelines, a defendant commits perjury and obstructs justice under U.S.S.G. § 3C1.1 24 if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of mistake or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993)(cited in United States v. Gaviria, 116 F.3d 1498, 1518 (D.C. Cir. 1997)). Furthermore, the district court must find willful perjury by clear and convincing evidence. United States v. Montague, 40 F.3d 1251, 1254 (D.C.Cir.1994). In this case, the court should not make such a finding. In making its findings of fact, the court only indicated it did not credit Mr. Yoder's testimony, exclusively dealing with issues on state of mind. At no time in its finding, and indeed at no time in the trial, was there any indication that Mr. Yoder said something that was FALSE, where the court believed some other testimony of another (government) witness that the court believed was true. The court cannot find by clear and convincing evidence that any alleged falsehood said by Mr. Yoder in his testimony was based upon intentional falsehood or perjury, as opposed to his perception of his events upon reflection two years after the event itself. Accordingly, the court should deny

---

[1] The only "contradictions" that may have been suggested was the reference to signs being posted and barricades being in place. However, as was made clear, the individuals were testifying as to how those things were set up and there was no evidence provided, either by witnesses or by physical evidence, to show the conditions of the path Mr. Yoder took at the time he was walking to the Capitol.

the two-point enhancement based upon USSG §3C1.1.

### D. Statutory Sentencing Factors under 18 U.S.C. § 3553(a)

As this court knows, in <u>United States v. Booker</u>, 543 U.S. 220, 264 (2005), the Supreme Court indicated that sentencing courts should "consult [the Sentencing]Guidelines and take them into account when sentencing." <u>Booker</u> further indicated that the purpose of the guidelines was to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'"<u>Booker</u>, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)).

Given the factors under 18 U.S.C. § 3553(a), this court should consider the following: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment,affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need for the sentence to avoid unwarranted disparities among defendants with similar records convicted of similar conduct. *See* 18 U.S.C. § 3553(a).

1. **Nature and Circumstances of the Offenses**

As described above, Mr. Yoder's actions on that day did not involve any violence, destruction, disrespect to lawful authorities, or even any inflammatory political speeches or actions. He followed police directives and requests both on January 6th, by officers at the Capitol, as well as with FBI agents who arrested and questioned him. He was not disrespectful and indeed he testified of the reverence he had to the U.S. Capitol on that day. Indeed, this is quite contrary to the actions of other individuals in the U.S. Capitol that day, Mr. Yoder attempted (and was filmed) discouraging the riotous behavior of others, who were yelling, taking items, and/or being aggressive or violent. At no time is he alleged to have been chanting or participating in any political rhetoric. He also exited and followed orders by officials in the U.S. Capitol and spent less than 20 minutes in the building. He returned back to his home and has not been alleged to have participated in any anti-government political events since.

2. **Defendant's History and Characteristics**

Mr. Isaac Yoder is currently 34 years old. He was 32 years old at the time of the offense. He has no prior criminal charges or convictions, either as an adult or as a juvenile. He was home schooled until he reached high school, though he did not earn a GED or High School Diploma. After high school, however, he did complete trade school, participating in a locksmith correspondence school from the Floey-

Belsaw Institute in River Falls, Wisconsin. He is currently self-employed, where he runs his own company, Yoder Lock & Key. He has been married for approximately ten (10) years and is the sole wage earner for his household. His wife, Kelly Yoder, 36, is a homemaker. They have three children, ages 9, 7 and 2. Similar to his own upbringing, his children are being homeschooled.

Mr. Yoder is a hardworking man who, along with his family, regularly attends church. As evidenced by his appearance, Mr. Yoder enjoys dressing in Colonial Period clothing and actually sews and does much of his costuming, as it is a passion of his. His interest in doing so is in reverence for American History and is not intended to be any sort of political statement on his part or even military reenactments. His family similarly is involved with his passion. It also has become associated with Yoder Lock & Key, the business that he runs as the primary wage earner is his family.

Perhaps the best example of the upstanding and respected citizen that Mr. Yoder can be shown by the genuine words from his friends and family. In support and in anticipation of his sentencing, Mr. Yoder has received an incredible outpouring of support from many friends and family.[2] The sixteen (16) letters provided along with this memorandum all speak to the excellent character of Mr.

---

[2] In accordance with local rules, the personal information of the letters has been redacted from the copies being filed. However, a separate copy unredacted copy will be sent to the government and to the court separately.

Yoder. They are included as exhibits to this memorandum and are incorporated herein. They include the following:

    Exhibit 1: Letter from Carmen and Albert Vasquez, Mr. Yoder's mother-in-law and father-in-law.

    Exhibit 2: Letter from Kaleb Jackson, a fellow member of Mr. Yoder's church.

    Exhibit 3: Letter from Kevin Rouintree, a fellow member of Mr. Yoder's church.

    Exhibit 4: Letter from Arthur Vance, a customer of Mr. Yoder's company.

    Exhibit 5: Letter from Tom Eldredge, a fellow member of Mr. Yoder's church.

    Exhibit 6: Letter from Scott Buerge, a family friend.

    Exhibit 7: Letter from Charlotte Buerge, a family friend.

    Exhibit 8: Letter from Henry John Lina, a friend.

    Exhibit 9: Letter from Melanie Lina, a friend.

    Exhibit 10: Letter from Coco Moore, Isaac Yoder's brother.

    Exhibit 11:  Letter from David Benham, a former boss.

    Exhibit 12: Letter from Andrew Hurt, a family friend.

    Exhibit 13: Letter from Jolene Hurt, a family friend.

    Exhibit 14: Letter from Janie Claflin, a fellow member of Mr. Yoder's church.

    Exhibit 15: Letter from Jason Claspill, a business associate.

    Exhibit 16: Letter from Jerry and Cynthia Haggard, family friends.

All these letters speak in different ways of the outstanding behavior of Mr. Yoder, in the town in which he resides in Missouri, as well as the respect

that he has from members of his church and community.

### 2. Need to Promote Respect for the Law, to Provide Just Punishment, toAfford Adequate Deterrence, and to Protect the Public

Mr. Yoder understands that this Honorable Court has found him guilty of the charges. Just as he has respect and reverence for our country, he also has a respect for the authority of the court. Indeed, he has shown his respect for the court by being fully compliant with his release conditions. He has attended every court hearing. He also cooperated with authorities from the onset. In short, Mr. Yoder has shown his respect for the law with his actions. He intends to fully cooperate with the decision of the court and will comply with whatever conditions are placed upon him. Finally, his lack of criminal record and no violations of his release condition or other laws further show Mr. Yoder's respect for the law. Mr. Yoder has always been a law-abiding citizen and had never been cited for anything greater than a traffic offense prior to this case.

Mr. Yoder would also suggest that, given the sum of his actions, a probationary sentence is a just punishment. Mr. Yoder will now have a criminal record and will presumably remain under the supervision of the court for an extended period of time.  Mr. Yoder was nonviolent and did not commit any actions which would suggest that he was seeking to disrupt the electoral process in any way. He should be punished for his unlawful entry into the Capitol, but his

actions do not suggest a lawlessness that is a perpetual problem, or one that calls for incarceration.

Finally, the need to protect the public from Mr. Yoder should, respectfully, be of little to no concern. Mr. Yoder has not provided any suggestion that he is a danger to the public. Even his actions inside the Capitol do not suggest any fervent political agenda or safety concern to the public. Mr. Yoder has shown that he can abide by the law in both his cooperation after his arrest, lack of any other criminal record, and full compliance with release conditions.

### 3. Need to Avoid Unwarranted Sentencing Disparities

The court undoubtedly wishes to avoid disparities between defendants who have been convicted of these misdemeanors that have been applied to individuals who entered the U.S. Capitol and did not cause any damage. In the large majority of the January 6th defendants who have been sentenced to these misdemeanor offenses, it appears that most have received a fully probationary sentence, with about a third of those individuals receiving a limited amount of home confinement. Accordingly, Mr. Yoder would respectfully request that a sentence of probation is appropriate in his case. There is nothing in the actions of Mr. Yoder that would necessarily suggest that his actions had any aggravating circumstances to justify a non-probationary sentence or even home confinement. To the contrary, it is not

disputed that Mr. Yoder, in addressing the crowd inside the U.S. Capitol, was seeking to discourage lawlessness and inappropriate behavior. Who is to say that some individuals who were in the Capitol did not take Mr. Yoder's statements to heart and decided to behave more appropriately (or better said, less inappropriately)?

While the government may suggest that Mr. Yoder's choice to go to trial should be a reason not to be treated similarly to other January 6th misdemeanants, the defense would respectfully suggest that that issue has already been considered as part of his sentence in that Mr. Yoder did not and will not be receiving a reduction for acceptance of responsibility. The defense would respectfully suggest that his actions on January 6th were the same, if not, even less egregious that others, when the court considers the fact that Mr. Yoder is not alleged to have been chanting or yelling political statements, followed police direction as soon as he was given an order, and even tried to discourage lawlessness of others. Accordingly, Mr. Yoder should be sentenced similarly to other similarly situated misdemeanants.

Given the circumstances of Isaac Yoder - his lack of criminal record, his compliance with her pretrial conditions, his nonviolent behavior within the Capitol, his employment – Mr. Yoder would respectfully request a fully probationary sentence with hours of community service if the court feels it is appropriate. This

has been a valuable lesson and is one to never be repeated. Mr. Yoder has shown through his actions that he is respectful of authority and cooperation with authorities, both the FBI and the court, and that he has a very low chance of recidivism. As he has already done, he will comply with all conditions placed upon him. A probationary sentence would also allow him to continue to provide for his family. Should the court believe that some level of detention is necessary, Mr. Yoder would respectfully ask that he be allowed to serve it in the form of home confinement. Should the court feel that a short period of incarceration is required (which we obviously hope is not the case), we would ask for the court to allow it to be served as close to his residence in Missouri as possible. Mr. Yoder would also request that a fine not be ordered, as his salary qualified him for court-appointed counsel and his employment earnings remain at similar levels.

WHEREFORE, for the reasons stated above, Defendant Isaac Yoder respectfully requests a full probationary sentence and community service if the court deems it appropriate.

Respectfully submitted,

ISAAC YODER
By Counsel

/s/ John L. Machado
John L. Machado, Esq.
Bar. No. 449961
Counsel for Isaac Yoder
503 D St, NW, Suite 310
Washington, DC 20001
Phone: (703) 989-0840
E-mail: johnlmachado@gmail.com

## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 24th day of August, 2023, which will send a notification of such filing (NEF) to the following to allcounsel of record.

/s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Isaac Yoder
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com